UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 07-Cr-50

DENNIS M. TROHA,

    Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney; and the defendant, Dennis M. Troha, individually and by attorney Franklyn Gimbel, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2.    The defendant has been charged in a two-count indictment which alleges violations of Title 18, United States Code, sections 1341 (Count One) and 1001 (Count Two). As part of this plea agreement, the defendant also will be charged in a two-count information, which alleges violations of Title 18, United States Code, section 371, and Title 2, United States Code, sections 441a and 441f.

3.    The defendant has read and fully understands the charges contained in the indictment and information and fully understands the nature and elements of the crimes with which he has been

charged. The charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the two counts of the information, which are attached hereto and incorporated herein.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

*At all times relevant to the time period set forth in the information, Dennis M. Troha was an active contributor to political candidates and parties affiliated with both the Republican and Democratic Parties. As a result of this activity, Troha was aware of restrictions under state and federal law pertaining to amounts and sources of funds used to make political contributions.*

*At the same time, independent of political activity, Troha was a generous financial benefactor for family members and close friends. Troha made numerous personal loans for family members and friends unrelated to political contributions.*

*Between on or about September 1, 2002, and on or about January 12, 2007, however, Troha provided funds to family members for the specific purpose of assisting and/or encouraging financial contributions to political candidates. Because of his familiarity with elections requirements, Troha and others involved knew that such transactions would allow him to exceed the limit for individual financial campaign contributions.*

2

*One such transaction involved Troha providing checks to family members in October 2002 in order to fund contributions to the federal account of the Democratic Party in excess of the $5,000 limit set by federal law for individual contributions. Troha himself made a $5,000 contribution, but sought to exceed that limit by providing funds to family members for them to make similar contributions in their names. Troha believed the contributions would help the "Doyle for Wisconsin" gubernatorial campaign. The checks were designated as "loans." Thereafter, Troha did not seek repayment of the funds until after being interviewed by agents of the FBI on January 12, 2007. In fact, on or about January 5, 2005, Troha signed financial documents that failed to disclose the existence of the above-described loans. The total illegal contributions to the federal account of the Democratic Party exceeded $2,000 in a calendar year.*

*Another such transaction involved funds provided to family members for contributions to the campaign of President George W. Bush. Troha had previously made a personal contribution to the campaign in the maximum amount of $2,000. Troha then gave money to various family members to make contributions to the Bush campaign purportedly in their own names. The total illegal contributions to the Bush campaign exceeded $2,000 in a calendar year.*

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

## PENALTIES

6. The parties understand and agree that the offenses in the information to which the defendant will enter pleas of guilty each carry the following maximum penalty: one (1) year imprisonment; $100,000 fine; a mandatory special assessment of $25.00; and a maximum of one (1) year of supervised release. Therefore, by pleading guilty to the two counts of the information, the

3

defendant faces a total maximum penalty of two years' imprisonment; a $200,000 fine; and a mandatory special assessment of $50.00. The supervised release terms run concurrent for a total exposure of one year.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charges set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that a conspiracy involving two or more persons existed for the purpose of violating campaign contribution limits under federal election laws for personal contributions;
>
> Second, that the defendant knowingly and willfully joined the conspiracy; and
>
> Third, that an act was taken in furtherance of the conspiracy.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

4

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in the information. The defendant acknowledges and agrees that his attorney, in turn, has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty pleas solely as a result of the sentencing court's determination of defendant's criminal history.

### Guideline Calculations

13. The parties acknowledge, understand, and agree that, pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty. The parties agree that, based on the evidence known to the government prior to cooperation by the defendant, the total amount of illegal federal contributions exceeded $30,000 and was less than $70,000.

14. The parties agree that, under section 2C1.8 of the guidelines, the defendant faces a base offense level of 8.

15. The parties further agree that under section 2C1.8(b)(1) (incorporating section 2B1.1), an enhancement of 6 levels is required.

16. The parties agree that no other guideline enhancement provision appears applicable.

5

17. The parties further agree that, under section 3E1.1, the defendant is entitled to a two-level reduction for acceptance of responsibility. Under this agreement, the defendant is free to request at sentencing any other sentencing guideline reductions.

## Sentencing Recommendations

18. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding the fine to be imposed; and any other matters not specifically addressed by this agreement.

20. The United States Attorney agrees to recommend a sentence at the low end of the applicable guideline range. The United States Attorney also agrees to discuss its sentencing recommendation with defense counsel prior to the sentencing hearing.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

6

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty pleas solely as a result of the sentence imposed by the court.

## Special Assessment

23. The defendant agrees to pay the special assessments in the amount of $50 prior to or at the time of sentencing.

## DEFENDANT'S COOPERATION AND FURTHER AGREEMENTS

24. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings if asked to do so by the prosecution. The government agrees that this testimony will be under a grant of immunity to be memorialized in a separate document. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from any applicable statutory mandatory minimum and the applicable sentencing guideline range. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

25. Based on the defendant's agreement to plead guilty to the charges in the information and to truthfully testify before the grand jury, the United States Attorney agrees to move to dismiss the indictment and to bring no other criminal charges against the defendant for the conduct now known by the government. In addition, the United States Attorney had previously committed to

defense counsel that no other immediate Troha family member would be charged for the conduct alleged in the indictment and information; and that commitment continues as part of this agreement.

26. The parties further acknowledge that nothing in this agreement prohibits the United States from issuing charges relating to this conduct and any conduct against any other person associated with the defendant and his immediate family members. The defendant acknowledges that he may be required to provide information and testify about actions of these other persons.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine

8

those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

**GENERAL MATTERS**

30. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

9

31.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

32.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

33.     The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

34.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

10

## VOLUNTARINESS OF DEFENDANT'S PLEA

35. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: June 21, 2007

DENNIS M. TROHA
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 6/21/07

FRANKLYN GIMBEL
Attorney for Defendant

For the United States of America:

Date: June 22, 2007

STEVEN M. BISKUPIC
United States Attorney

Date: June 22, 2007

MATTHEW L. JACOBS
Assistant United States Attorney

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                       Case No. 07-Cr-50

DENNIS M. TROHA,

    Defendant.

## INFORMATION

**The United States Attorney Charges:**

### COUNT ONE

1. Between on or about September 1, 2002, and on or about January 12, 2007, in the State and Eastern District of Wisconsin,

**Dennis M. Troha**

did knowingly conspire with persons known and unknown to violate state and federal election laws through contributions for the benefit of the campaigns involving the governor of the State of Wisconsin.

2. The actions of Troha included knowing and willful violations of the Federal Election Campaign Act, including Title 2, United States Code, Sections 441a and 441f.

3. As part of the conspiracy, Troha, who had reached the contribution limit for his own personal contributions, provided money to family members to make contributions purportedly in their names, but using Troha's funds and/or funds controlled by him.

4. One such violation involved Troha providing checks to family members in October of 2002 in order to fund contributions to the federal account of the Democratic Party in excess of the $5,000 limit set by federal law for contributions by one person. The checks were designated as "loans."

5. The amount of money involved in the unlawful contributions to the federal account exceeded $2,000 during a calendar year.

6. As an act in furtherance of the conspiracy, on or about January 5, 2005, in the State and Eastern District of Wisconsin, Dennis M. Troha signed financial documents that failed to disclose the above-described loans.

All in violation of Title 18, United States Code, section 371.

**The United States Attorney Further Charges:**

## COUNT TWO

1. Between on or about February 1, 2002, and on or about January 12, 2007, in the State and Eastern District of Wisconsin,

**Dennis M. Troha**

did knowingly conspire with persons known and unknown to violate federal election laws through contributions for the benefit of the campaigns of George W. Bush.

2. The actions of Troha included knowing and willful violations of the Federal Election Campaign Act, including Title 2, United States Code, Sections 441a and 441f.

3. As part of the conspiracy, Troha, who had reached the contribution limit for his own personal contributions, provided money to family members to make contributions purportedly in their own names, but using Troha's funds and/or funds controlled by him.

4. The amount of money involved in the unlawful contributions to the federal account exceeded $2,000 during a calendar year.

5. As an act in furtherance of the conspiracy, on or about September 1, 2003, in the State and Eastern District of Wisconsin, Troha provided money to family members for the purpose of having the family members use the money for contributions to the presidential campaign of George W. Bush.

All in violation of Title 18, United States Code, section 371.

_____
Date

_____
STEVEN M. BISKUPIC
United States Attorney

3